IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Anne Mercer, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>Drohan Management Group, Inc., )<br>)<br>   Defendant. ) | Case No. 1:10cv1212 |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Drohan Management Group, Inc.'s Motion for Summary Judgment. (Dkt. No. 66.) This case concerns Plaintiff Anne Mercer's discriminatory discharge, retaliation, and failure to accommodate claims against her former employer Drohan Management Group, Inc. ("DMG") under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"). There are three issues before the Court. The first issue is whether Plaintiff, who was not actually disabled within the meaning of the ADA, can establish a claim of discriminatory discharge for being regarded as disabled by Defendant under the ADA. The second issue is whether Plaintiff can establish a claim of failure to accommodate for being regarded as disabled under the ADA. The third issue is whether Plaintiff, who requested three weeks of accrued leave to have surgery for endometrial cancer, can establish a retaliation claim under the ADA.

The Court grants Defendant's Motion for Summary Judgment because Plaintiff cannot establish a prima facie case of any of her claims. First, the Court holds that Plaintiff's discriminatory discharge claim fails because Plaintiff who did not have a disability cannot

establish that Defendant ever regarded her as disabled. Second, the Court holds that Plaintiff's failure to accommodate claim fails because (1) Plaintiff cannot establish that she was regarded as disabled; and (2) even if Defendant regarded Plaintiff as disabled, she was not entitled to a reasonable accommodation for merely being regarded as disabled. Third, the Court holds that Plaintiff's retaliation claim fails because she cannot establish that she engaged in a protected activity when she requested to use her three weeks of accrued leave to have surgery for endometrial cancer.

## I. BACKGROUND

Plaintiff Anne Mercer was employed as an account executive by Defendant DMG from March 2007 to February 2008. On February 11, 2008, Ms. Mercer was diagnosed with early stage endometrial cancer that required a hysterectomy. However, her doctor anticipated that she would fully recover in a few weeks following the surgery. She then informed DMG about her diagnosis and requested three weeks of accrued leave to recuperate beginning March 5, 2008, the day of her surgery. However, DMG terminated her on February 21, 2008, the day after she made an inappropriate statement to the president of one of DMG's clients during a board meeting. Subsequently, Ms. Mercer brought three claims against DMG: Count I (Discriminatory Discharge); Count II (Retaliation for Requesting Reasonable Accommodation); and Count III (Failure to Grant Plaintiff's Request for a Reasonable Accommodation). DMG now moves for summary judgment on all three claims.

DMG provides association management services to small and medium-sized associations by supplying account executives to serve as their executive directors. It has been in business for twenty-four years with Bill Drohan as its President. Ms. Mercer started at DMG as an account assistant in March 2007 and she became an account executive in July 2007. Her employment

2

agreement provided that (1) she was an employee at will; (2) she may be terminated for cause without notice; and (3) she must use her best efforts to further the good relationship between DMG and its clients and agree to not to interfere with or disturb DMG's relationship with its clients. The agreement does not contain any provisions concerning the company's evaluation process for its employees. Nor does it contain restrictions as to any employee benefits including vacation and sick leave.

At various times during her tenure at DMG, Ms. Mercer served as the executive director of the Express Carriers Association ("ECA"), the National Association of State and Local Equity Funds ("NASLEF"), the American Association of Medical Dosimetrists ("AAMD"), and the Society for Innovative Medical Practice Design ("SIMPD"). Her duties involved serving as the chief executive reporting to and working with the President and Board of Directors of each of the associations under the terms of the contract between the association and DMG. With the help from her two assistants, Delores See and Roberta Omachel, Ms. Mercer also assumed overall responsibilities for staff functions, including finances, membership, conferences, and publications for these organizations. After Ms. Mercer was terminated, her clients were managed by Cathy Vail, the Director of Operations at DMG. Then, they were assigned to two other account executives.

With respect to ECA, Ms. Mercer primarily worked with its board members and its president Carrie Ehlers, who is now deceased. ECA was an important yet difficult client for DMG. The board members of ECA, who were owners and presidents of companies in the express delivery or trucking services, were very demanding and had little tolerance of someone not measuring up to its standards. In fact, the first executive director from DMG, Rebecca Page, did not manage the account very long before Mr. Drohan removed her at the request of the client.

Then, Mr. Drohan assigned the ECA account to Ms. Mercer. Ms. Mercer stated that the reason for Ms. Page's removal was that Ms. Ehlers did not like Ms. Page. Ms. Mercer described Ms. Ehlers as a difficult president and a person who could not be made happy. Ms. Mercer also experienced difficulties in managing the ECA account. She discussed the issue with Ms. Vail and asked for more support staff; however, Ms. Mercer did not receive additional help. At the time of her termination, Ms. Mercer was preparing for an ECA meeting that would take place in April 2008.

On February 11, 2008, Ms. Mercer's doctor informed her that she had early stage endometrial cancer and advised an immediate hysterectomy. However, the prognosis was very good as she was expected to fully recover within six weeks of the surgery. Ms. Mercer told her doctor that she had accrued three weeks of leave at work and she intended to have the surgery and return to work within that time frame. The doctor did not object to her plan.

On the same day, Ms. Mercer revealed her diagnosis and the planned surgery to Ms. Vail, then to Mr. Drohan. She also informed them about her doctor's optimistic view that she would make a full recovery in a few weeks. Additionally, she requested that DMG allow her to use her three weeks of accrued leave to recuperate and she proposed to return to work on March 26, 2008. Mr. Drohan told Ms. Mercer that his wife had been treated for the same condition. He gave Ms. Mercer the information of his wife's doctor and suggested that she obtain a second opinion. Mr. Drohan also inquired whether Ms. Mercer would need chemotherapy and radiation after the surgery. Ms. Mercer told him that her doctor did not believe these treatments were needed, but the doctor would not know for certain until after the surgery. Lastly, Mr. Drohan asked Ms. Mercer not to disclose her diagnosis and the need for a medical leave to her co-workers or DMG's clients until DMG developed a plan to deal with her absence.

On February 12, 2008, Ms. Mercer had a team meeting with her assistants, Ms. See and Ms. Omachel, as well as Mr. Drohan and Ms. Vail. Before the meeting, Ms. Mercer disclosed her diagnosis to Ms. See and Ms. Omachel and told them about her three-week leave. Ms. Mercer's condition, however, was not mentioned in the meeting. According to Ms. Mercer, during the team meeting, Mr. Drohan complimented her on organizing the NASLEF Board meeting. Nonetheless, Mr. Drohan did not do or say anything to Ms. Mercer in the following days.

Additionally, in February 2008, Ms. Mercer observed that DMG interviewed candidates for an account executive position, but she acknowledged that they would be interviewed even if she had stayed in her job. Mr. Drohan subsequently hired Peter Doherty before Ms. Mercer was terminated. Mr. Doherty started working at DMG in early March, and he eventually took over the ECA account. Mr. Doherty also experienced difficulties in managing the ECA account. Then, in January 2010, ECA terminated DMG's services.

On February 19, 2008, in a staff meeting attended by Mr. Drohan, Ms. Vail, and the account managers, Ms. Mercer complained to Mr. Drohan that she was too busy and asked for more help. Mr. Drohan responded that she had enough support from Ms. See and Ms. Omachel.

On February 20, 2008, Ms. Mercer participated in an ECA full board meeting conducted via a conference call. Ms. Vail also joined the meeting as she needed to familiarize herself with the ECA account so that she could assist the client during Ms. Mercer's absence. During that conference call, Ms. Ehlers expressed concerns that some projects were behind schedule. She also assigned more work to Ms. Mercer. Feeling that Ms. Ehlers was being very demanding, Ms. Mercer responded to Ms. Ehlers, "Carrie, you realize you're not my only client."[1] Ms. Mercer

---

[1] The parties dispute the manner in which Ms. Mercer made the statement. Ms. Mercer maintains that she did not make that remark in an angry or frustrated tone. Ms. Vail, on the other hand, testified in her deposition that Ms.

5

acknowledged that she should not have made that statement and she regretted that she said it. After the meeting, Ms. Vail reported the incident to Mr. Drohan and told him that she did not want to be a part of another phone call. Additionally, Ms. Ehler allegedly called Mr. Drohan and asked that Ms. Mercer be removed from the account.[2]

On February 21, 2008, the day after the ECA board meeting, Mr. Drohan fired Ms. Mercer in a meeting attended by Ms. Vail and Wendy Shields, the accounting administrative assistant at DMG. Mr. Drohan's reasons for the termination included her poor performance, her lack of leadership, and the clients' demands to remove her from their accounts. Ms. Mercer asked about her medical coverage for the cancer treatment and was told she could apply for health benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). When Ms. Mercer inquired about unemployment insurance, Ms. Vail stated that if she cannot work, she cannot apply for unemployment insurance.

Ms. Mercer timely filed her charge against DMG with the U.S. Equal Employment Opportunity Commission ("EEOC"). After EEOC issued a Notice of Right to Sue letter, Ms. Mercer commenced this action on October 26, 2010, asserting three claims against DMG under the ADA: Count I (Discriminatory Discharge); Count II (Retaliation for Requesting Reasonable Accommodation); and Count III (Failure to Grant Plaintiff's Request for a Reasonable Accommodation). Defendant DMG's Motion for Summary Judgment on all three counts is now before the Court for determination.

---

Mercer was upset and yelled at the client.

[2] Plaintiff argues that this call is inadmissible hearsay as Ms. Ehler is now deceased and she had not testified about this event. Defendant, however, contends that it is not hearsay because it is not for the truth of the matter asserted; rather, it is used to show Mr. Dorhan's state of mind and motive to fire Ms. Mercer. This Court declines to address the issue of admissibility of Ms. Ehler's call as it is irrelevant to the issue of whether DMG regarded Ms. Mercer as disabled within the meaning of the ADA.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## B. Analysis

The Court grants DMG's summary judgment as to Ms. Mercer's ADA wrongful discharge claim because she was neither actually disabled nor regarded as disabled by DMG. The Court grants DMG's summary judgment as to Ms. Mercer's ADA failure to accommodate claim because (1) she was not disabled within the meaning of the ADA; and (2) even if DMG regarded her as disabled she was not entitled to a reasonable accommodation. Moreover, the Court grants summary judgment as to Ms. Mercer's ADA retaliation claim because she cannot establish that she engaged in a protected activity when she requested to take three weeks of accrued leave to have surgery for endometrial cancer.

### *1. Discriminatory Discharge Claim under the ADA*

The Court grants summary judgment in favor of DMG on Ms. Mercer's claim of discriminatory discharge under the ADA because Ms. Mercer was not disabled within the meaning of the ADA. To bring an ADA wrongful discharge claim, a plaintiff must show that: (1) he was in the protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of wrongful discrimination.[3] *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). "In order to come within the ADA's protected class, a plaintiff must first show that she is

---

[3] Courts have applied the *McDonnell Douglas* scheme of proof to claims brought under several different statutes including the ADA. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Ennis v. National Ass'n of Business and Educational Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). "If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* "If the defendant meets this burden of production, the presumption created by the *prima facie* case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination." *Id.* In this case, Plaintiff cannot meet her initial burden of proving a prima facie case for her claims. Therefore, the Court needs not to address issues concerning Defendant's nondiscriminatory explanation for terminating Plaintiff.

disabled within the meaning of the Act." *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002). The ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102 (2).

A plaintiff may be regarded as disabled under the ADA if either "(1) a covered entity mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001). An employer regards an employee as substantially limited in his ability to work if the employer perceives him "to be significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998). "Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 291 (4th Cir. 2004). Moreover, "[t]he fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Haulbrook*, 252 F.3d at 703 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)).

In this case, Ms. Mercer does not dispute that she was not actually disabled; rather, she argues that she was regarded as disabled under the ADA. However, the record does not support Ms. Mercer's contention that DMG, specifically Mr. Drohan, the president of DMG who makes

employment decisions at the company, ever considered her medical condition significantly restricted in her ability to work.

First, on February 11, 2008, Mr. Drohan's initial response to Ms. Mercer's disclosure of her medical condition and her request for three weeks leave does not suggest that he regarded her as disabled. When Ms. Mercer informed him about her diagnosis and her doctor's optimistic view about her quick recover from the surgery, Mr. Drohan told her that his wife also had been treated for the same condition. He also inquired whether she needed chemotherapy and radiation. Because there is no information as to the nature or the extent of his wife's condition and how his wife's medical condition impacted on his perception of people with the same condition, Mr. Drohan's statements and inquires do not support Ms. Mercer's argument that he regarded her as disabled. Nor does Mr. Drohan's request that she refrain from disclosing her situation to other employees or DMG's clients until DMG had a plan to handle her absence indicate that Mr. Drohan believed Ms. Mercer's condition would limit her ability to perform as an account executive.

Second, after the February 11 meeting and before Ms. Mercer was terminated, no evidence shows that Mr. Drohan regarded her as disabled. In the days following the February 11 meeting, there was no change as to Ms. Mercer's work responsibilities as result of her diagnosis. Nor did Mr. Drohan express any concern of the impact of her condition on her job performance. In fact, there were no communications concerning her medical condition between Ms. Mercer and Mr. Drohan. Silence and inaction cannot be interpreted as a product of Mr. Drohan's belief that Ms. Mercer's medical condition will substantially limit her ability to work.

Ms. Mercer also argues that the hiring of Mr. Doherty evidences that Mr. Drohan regarded her as disabled. The Court disagrees. The hiring of Mr. Doherty may suggest that Mr. Drohan planned to have Mr. Doherty take over the ECA account, but it does not indicate that this decision was prompted by his belief that Ms. Mercer was disabled. Ms. Mercer acknowledged that the ECA was a demanding client and she struggled to meet its expectations. Moreover, as evidenced by the removal of Ms. Page, Mr. Drohan was willing to replace the account executives to please the members of the ECA board. Additionally, Ms. Mercer would be absent for three weeks in March; and Mr. Drohan needed someone to manage the account and prepare for the meeting in April. Thus, the record suggests that Mr. Drohan may want Mr. Doherty to manage the ECA account. Nonetheless, Mr. Drohan's personnel plan regarding the ECA account does not reflect Mr. Drohan's belief that Ms. Mercer's medical condition would significantly limit her ability to work.

Third, Ms. Mercer cannot show that she was regarded as disabled at the time of her termination. When Mr. Drohan fired Ms. Mercer on February 21, her medical condition was not mentioned as a reason for the termination. Only when she asked about unemployment insurance, did Ms. Vail state that if Ms. Mercer cannot work, she cannot apply for unemployment insurance. Ms. Mercer argues that this statement suggests that DMG regarded her as disabled. However, this statement did not necessarily show that Ms. Vail believed that Ms. Mercer's condition would affect her ability to perform in a similar position or a broad range of jobs. Even if this statement reflects Ms. Vail's belief that Ms. Mercer's condition would affect her ability to work, Ms. Vail's statement cannot be imputed to DMG because it is Mr. Drohan who made employment decisions at DMG, not Ms. Vail. In sum, Ms. Mercer fails to establish that she was

regarded as disabled during the relevant time. Consequently, Ms. Mercer's discriminatory discharge claim falls.

*2. Failure to Accommodate Claim under the ADA*

Similarly, the Court grants summary judgment in favor of DMG on Ms. Mercer's claim of failure to accommodate under the ADA because Ms. Mercer cannot establish that she was disabled within the meaning of the ADA; therefore, she cannot establish a prima facie case of failure to accommodate. Moreover, even if she was regarded as disabled, Ms. Mercer was not entitled to a reasonable accommodation under the ADA.

Ms. Mercer cannot establish that she was disabled within the meaning of the ADA. In a failure to accommodate claim, a plaintiff establishes a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). As discussed above, Ms. Mercer did not have an actual disability, nor was she regarded as disabled. As such, her failure to accommodate claim fails because she cannot establish a prima facie case of the claim.

Furthermore, even if she can show that she was regarded as disabled, Ms. Mercer may not be entitled to a reasonable accommodation under the ADA because there is no right to an accommodation where the individual does not have an actual disability. Though the United States Court of Appeals for the Fourth Circuit has not addressed this issue, the majority view is that an employer is under no obligation to accommodate an employee who is simply regarded as disabled. *See Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 388 (4th Cir. 2008)

(discussing the views of other courts but declined to address the issue). Moreover, the 2008 Amendments to the ADA formally adopt this position. The law now states, "a covered entity . . . need not provide a reasonable accommodation . . . to an individual who [is merely regarded as disabled]." 42 U.S.C. § 12201(h) (2009). District Courts in this circuit, including this Court, have found that the majority view is well grounded in logic and have opined that even when the 2008 Amendments are not controlling, an employer has no duty under the ADA to offer a reasonable accommodation to an employee who is merely regarded as disabled. *See Young v. United Parcel Service, Inc.*, No. 8:08cv02586, 2011 WL 665321, at *18 (D. Md. Feb. 14, 2011) (stating that although the 2008 Amendments do not apply to the instant case, "the amendments further buttress the notion that Congress never intended the accommodation provision to protect 'regarded as' disabled employees"); *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 673 (E.D. Va. 2009). Similar to *Young* and *Bateman*, the 2008 Amendments do not control in this case; nonetheless, the Court finds that Ms. Mercer was not entitled to a reasonable accommodation even if DMG regarded her as disabled. Consequently, her failure to accommodate claim fails.

### 3. Retaliation Claim under the ADA

The Court grants Defendant's Motion for Summary Judgment on Ms. Mercer's retaliation claim because she cannot establish that she engaged in a protected activity. To establish a prima facie case of retaliation claim, a plaintiff must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action at the hands of his employer; and (3) that a causal connection existed between the protected activity and the adverse action. *Rhoads*, 257 F.3d at 392. Under certain situations, Plaintiff's request for reasonable accommodation is a

protected activity capable of grounding an ADA retaliation claim. *Haulbrook*, 252 F.3d at 706 n3.

Ms. Mercer argues that she has established the prima facie case because the record shows that she requested a reasonable accommodation of three weeks leave to have the surgery for endometrial cancer and DMG terminated her ten days later. The Court rejects that argument because she cannot show that she engaged in a protected activity. Ms. Mercer's request for three weeks of accrued leave was hardly a protected activity. Ms. Mercer did not have an actual disability, and she did not believe that she was disabled on February 11, 2008 when she requested three weeks off for the surgery. As discussed above, she was not regarded as one with a disability under the ADA and she was not entitled to a reasonable accommodation. Furthermore, Ms. Mercer had earned three weeks of leave and her employment contract contains no restrictions as to how and when she wants to use the leave accrued. Thus, her request for leave, that she had already accrued, cannot be characterized as a request for reasonable accommodation under the ADA. Consequently, when she requested the leave, Ms. Mercer was not engaging in a protected activity. Therefore, Ms. Mercer's retaliation claim fails.

### III. CONCLUSION

The Court grants Defendant's Motion for Summary Judgment. The Court holds that Plaintiff, who did not have an actual disability, cannot establish a discriminatory discharge claim under the ADA because she fails to show that Defendant ever regarded her as disabled. The Court holds that Plaintiff cannot establish a failure to accommodate claim under the ADA because (1) Plaintiff cannot establish that she was regarded as disabled; and (2) even if Defendant regarded Plaintiff as disabled, she was not entitled to a reasonable accommodation without actually being disabled. Lastly, the Court holds that Plaintiff cannot establish a

retaliation claim under the ADA because she did not engage in a protected activity when requesting to use her accrued leave to have surgery for endometrial cancer. For the foregoing reasons it is hereby

ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

The Clerk is directed to enter a separate Rule 58 judgment order in favor of Defendant Drohan Management Group, Inc. and against Plaintiff Anne Mercer.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___th day of November, 2011.


Alexandria, Virginia
11/28/2011
                                                    /s/
                                    Gerald Bruce Lee
                                    United States District Judge